***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. Employee is Cynthia Krutch.
3. Employer is Wake Medical Center which is self-insured.
4. The third-party administrator is Key Risk Management Services.
5. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between the employer and the employee on October 8, 2004, the date of injury.
6. Plaintiff's average weekly wage is $490.21.
 *********** EXHIBITS
The following exhibits were admitted into evidence by the Deputy Commissioner:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Indexed Set of Paginated Exhibits
 *********** ISSUES (a) Whether Plaintiff's right knee condition is a direct and natural consequence of her admittedly compensable left knee injury? If so, to what benefits, if any, is Plaintiff entitled?
 (b) Whether Plaintiff's psychological condition is compensable? If so, to what benefits, if any, is Plaintiff entitled? *Page 3 
 (c) Whether Plaintiff is estopped from claiming that her psychological condition is compensable due to a delay in her request for benefits that was prejudicial to Defendant?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff suffered an admittedly compensable injury to her left knee on October 8, 2004 while working for Defendant as a certified nurses' assistant. The injury occurred when Plaintiff hit her knee on a bed.
2. Following her compensable injury, Plaintiff's left knee began to give way. Sometime in January 2005, prior to Plaintiff undergoing left knee surgery, her left knee gave way and caused her to fall on her right knee.
3. Plaintiff's initial treatment for her left knee was provided by Dr. Mark Wood. On January 28, 2005, Plaintiff underwent arthroscopic surgery to her left knee by Dr. Wood.
4. Four days following her surgery, Plaintiff's left knee went numb and caused her to fall on her right knee again. Since that time, Plaintiff's left knee has given way on additional occasions, and Plaintiff has fallen on her right knee in an effort to protect her left knee.
5. Plaintiff's right knee has continued to be painful since she fell on it in October 2004, and has become worse with time.
6. Dr. Lyman Smith, an orthopedic surgeon at Raleigh Orthopedic Clinic, assumed care of Plaintiff's knees on December 29, 2005. *Page 4 
7. On November 27, 2007, Plaintiff underwent left knee replacement surgery. Both Plaintiff and Dr. Smith consider that surgery to be successful. Plaintiff is at maximum medical improvement for her left knee. Dr. Smith assigned a forty percent (40%) permanent partial impairment rating to Plaintiff's left leg and assigned her permanent work restrictions. Plaintiff is currently receiving ongoing temporary total disability compensation, and Defendant has provided her with vocational rehabilitation services.
8. Plaintiff is not at maximum medical improvement for her right knee. According to Dr. Smith, more diagnostic testing is needed to arrive at a definitive diagnosis of Plaintiff's right knee condition.
9. Dr. Smith testified that Plaintiff's right knee problems were a direct and natural result of her compensable left knee injury. Dr. Smith based his opinion upon the reports of Plaintiff, which the Full Commission finds to be credible, that her left knee gave way and she fell on her right knee on multiple occasions. Additionally, Dr. Smith felt that because Plaintiff's left knee was painful, she put more pressure on her right leg and used her right leg as a crutch.
10. Based upon the greater weight of the medical and other evidence of record, including the uncontroverted medical opinion of Dr. Smith, the Full Commission finds that Plaintiff's right knee condition is a direct and natural result of her compensable left knee injury.
11. Plaintiff has been seeing Dr. Wilson Comer, a psychiatrist, since 1985 for depression. She began treatment due to pain from a back injury that occurred during her former employment with Data General. Plaintiff has been on antidepressant medications since February 1985, however her depression was being effectively managed prior to her October 8, 2004 left knee injury. Plaintiff did not see Dr. Comer between 2003 and June 2005. *Page 5 
12. Plaintiff returned to Dr. Comer on June 7, 2005. It was noted that Plaintiff had been receiving antidepressants from her primary care physician. Plaintiff was tearful and reported being depressed, an inability to focus, crying spells, insomnia, and increased appetite, resulting in a 40 pound weight gain. At this appointment and follow-up appointments, Plaintiff attributed her symptoms to her work related knee injury due to pain in her knees and stress from trying to work under the circumstances.
13. Plaintiff was referred to an anger management class at work because of conflicts she began having with coworkers following her knee injury. Prior to this, Plaintiff had never had work-related anger management issues since beginning work at Defendant in 1995.
14. In June 2007, Plaintiff returned to Dr. Comer reporting increased psychiatric symptoms. He recommended an inpatient stay at Holly Hill Hospital, and Plaintiff was admitted on June 25, 2007. Dr. Joseph Mazzaglia, a psychiatrist, was Plaintiff's treating physician at Holly Hill. Plaintiff was subsequently transferred to a day program and was thereafter discharged on July 11, 2007. During her inpatient stay at Holly Hill, Plaintiff complained that her symptoms were worsened by her injury, pain, and mistreatment by the employer. Following her discharge, Plaintiff continued regular treatment with Dr. Comer.
15. In August 2007, Plaintiff's employment with Wake Med was terminated due to an inability to accommodate Plaintiff's work restrictions. In addition, Plaintiff lost her nursing assistant's license. Plaintiff testified that Defendant should have allowed her to do clinical duties in small increments to enable her to keep her license. However, Defendant took the position that Plaintiff was never released to more than sedentary duty and that allowing her to work in a clinical capacity would have violated her work restrictions and risked further injury. Therefore, Defendant declined to sign Plaintiff's application for license renewal. Plaintiff reported being *Page 6 
devastated by these events. Plaintiff's job and her nursing assistant's license were important to her both financially as well as emotionally.
16. On June 6, 2008, Plaintiff reported to Dr. Comer that she was doing well. Dr. Comer noted and testified that her mood was good and stable. Overall, things were going well and Dr. Comer noted that her affect was much brighter than it had been in years.
17. On October 1, 2008, Plaintiff returned to Dr. Comer reporting depression, difficulty sleeping, and increased anxiety. Dr. Comer adjusted Plaintiff's medications.
18. On October 22, 2008, Plaintiff returned to Dr. Comer again reporting suicidal ideations and an inability to commit to her own safety. She agreed thereafter to voluntarily return to Holly Hill Hospital. Plaintiff was readmitted to Holly Hill under the care of
Dr. Mazzaglia on October 23, 2008. Following her discharge, Plaintiff has continued to treat with Dr. Comer.
19. With regard to the cause of Plaintiff's psychological condition since her left knee injury, Dr. Smith testified that Plaintiff's pain and disability have "absolutely" significantly contributed to her depression, and that this aggravation of her pre-existing psychological condition continued as of the time of his deposition. Dr. Smith further explained: ". . . my impression since she had that hospitalization in Holly Hill is that the knee pain has been an issue for her that has been present and has affected her mood; and to some degree she hasn't completely recovered from what she feels is a physical injury, a physical damage, I would say, rather than — — I think she feels that she's been damaged and it feels like she may never recover from it, and that has added to her depression."
20. Likewise, Dr. Mazzaglia testified that Plaintiff's psychological condition ". . . was pre-existing and was aggravated by the stress that that injury placed on her both physically *Page 7 
and in terms of the impact on work." Based on the medical evidence of record, including the testimony of Drs. Smith and Mazzaglia, the Full Commission finds that Plaintiff's pre-existing psychological condition was aggravated by her October 8, 2004 compensable knee injury; however, the record indicates that Plaintiff had returned to her pre-injury psychological baseline as of June 6, 2008, when she reported to Dr. Comer that she was doing well, and he noted that her mood was good, stable, and better than it had been in years. Although it is clear from the record that Plaintiff did experience subsequent episodes of depression after June 6, 2008, the evidence of record is insufficient to establish that those episodes were causally related to the October 8, 2004 injury as opposed to the various other stressors in Plaintiff's life.
21. Based upon the greater weight of the evidence of record, including the uncontroverted medical opinions of Dr. Smith and Dr. Mazzaglia, the Full Commission finds that Plaintiff's admittedly compensable knee injury has significantly contributed to the ongoing aggravation of her pre-existing psychological condition. Plaintiff has received treatment from Dr. Smith and Dr. Mazzaglia for this aggravated condition following her knee injury and returned to her pre-injury psychological baseline as of June 6, 2008.
22. The evidence of record fails to establish that Defendant was prejudiced by Plaintiff's delay in requesting benefits for her psychological condition.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following: *Page 8 
 CONCLUSIONS OF LAW
1. The greater weight of the evidence of record establishes that Plaintiff's right knee condition is a direct and natural result of her admittedly compensable left knee injury, and thus Plaintiff's right knee condition is compensable. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the competent evidence of record establishes that Plaintiff's psychological condition following her October 8, 2004 accident at work resulted from an aggravation of a preexisting condition, and thus this condition is compensable from the date of injury, October 8, 2004, until June 6, 2008, when Plaintiff returned to her pre-injury psychological baseline. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of her compensable left knee and right knee as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including treatment provided by Dr. Smith. N.C. Gen. Stat. § 97-25.
4. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of her compensable psychological conditions as was reasonably required to effect a cure, provide relief, or lessen the period of disability, including treatment provided by Dr. Comer and Dr. Mazzaglia, from the date of injury, October 8, 2004, until June 6, 2008, when Plaintiff returned to her pre-injury psychological baseline. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following: *Page 9 
 AWARD
1. Defendant shall pay for medical expenses incurred or to be incurred as a result of Plaintiff's left knee and right knee as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including treatment provided by Dr. Smith.
2. Defendant shall pay for medical expenses incurred or to be incurred as a result of Plaintiff's psychological conditions as was reasonably required to effect a cure, provide relief, or lessen the period of disability, including treatment provided by Dr. Comer and Dr. Mazzaglia, from the date of injury, October 8, 2004, until June 6, 2008, when Plaintiff returned to her pre-injury psychological baseline.
3. A reasonable attorney fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from future disability compensation due Plaintiff and paid directly to Plaintiff's counsel by deducting every fourth compensation check due Plaintiff.
4. Defendant shall pay the costs due the Commission.
This __ day of November 2010.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALANCE COMMISSIONER *Page 10 
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1